IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1210

Filed: 7 January 2020

Mecklenburg County, No. 15 CVD 20688

James B. Myers, Jr., Plaintiff,

v.

Charlotte K. Myers, Defendant.

Appeal by defendant from order entered 4 April 2018 by Judge Jena P. Culler in District Court, Mecklenburg County. Heard in the Court of Appeals 22 May 2019.

*James, McElroy & Diehl, P.A., by Christopher T. Hood, Jonathan D. Feit and Haley E. White, for plaintiff-appellee.*

*Hamilton Stephens Steele + Martin, PLLC, by Amy E. Simpson, for defendant-appellant.*

STROUD, Judge.

Defendant-Wife appeals from the trial court's Equitable Distribution Judgment and Alimony Order. Wife argues the trial court erred by excluding her expert witness's testimony regarding potential tax consequences of an alimony award, by failing to make sufficient findings to support the amount of prospective alimony awarded, and by failing to award retroactive alimony. Because the trial court erred in its legal determination that North Carolina General Statute § 1A-1, Rule 26(b)(4)(a)(1) required exclusion of Wife's expert witness, the trial court failed to exercise its discretion to decide whether to admit her testimony and we remand for

further consideration. Because the trial court did not make sufficient findings to support the amount of alimony awarded or explain why it denied Wife's claim for retroactive alimony, we reverse and remand the order as to the amount of the prospective alimony and as to the denial of retroactive alimony.

## I. Background

Husband and Wife were married in 1994 and separated on 26 July 2014. Two children were born to the marriage, in 2005 and 2007. After the first child was born, Wife stopped working outside the home to care for the children or worked only part-time, and Husband was the primary wage earner. On 6 November 2015, Husband filed a complaint with claims for child custody, child support, equitable distribution, and absolute divorce. On 21 January 2016, Wife filed her answer and counterclaims for child custody, child support, post-separation support, alimony, equitable distribution, and attorney fees. On 2 March 2016, the trial court entered a judgment of absolute divorce, reserving all other pending claims. On 22 March 2016, Husband filed his affirmative defenses and reply, alleging marital misconduct by Wife as a defense to alimony. On 23 January 2017, with leave of court, Wife filed her amended answer and counterclaims, adding allegations of marital misconduct by Husband. The parties engaged in discovery regarding all pending claims.

About a week before trial on the equitable distribution and alimony claims, the parties entered a Consent Order regarding permanent child custody and child

support. Under the Consent Order, Husband was required to pay child support of $1,700.00 per month, starting on 1 September 2017, and 75% of the children's uninsured medical expenses and certain extracurricular activities. The Consent Order did not address how child support was calculated and did not mention retroactive or past prospective child support.

The trial court held a hearing on equitable distribution and alimony on 13 and 14 September 2017 and entered its order on these claims on 4 April 2018. The trial court granted an unequal distribution of the marital property, granting Wife 52% of the net marital estate. In making the unequal distribution, the trial court specifically considered several factors under North Carolina General Statute § 50-20(c), including that Husband's income "greatly exceeded that of" Wife during the marriage and his "career growth potential is also far greater than" hers; Husband's higher expectations of pension or retirement benefits; Wife's contributions as a homemaker and primary parent; and Wife's support for Husband in advancing his career. Neither party challenges the equitable distribution provisions of the order on appeal.

On the alimony claim, the trial court made extensive findings of fact addressing Husband's allegations of marital misconduct by Wife early in their marriage but determined that he was aware of the incident and condoned it. Although Wife presented evidence regarding allegations of illicit sexual misconduct by Husband in support of her alimony claim, the trial court made no findings on this

issue. The trial court also made detailed findings of fact regarding the parties' incomes and expenses and required Husband to make monthly alimony payments of $1,200.00. We will address the trial court's findings regarding alimony in more detail below. Wife timely appealed from the trial court's order.

## II. Exclusion of Expert Testimony

### A. Standard of Review

Wife's first issue arises from the trial court's exclusion of testimony of her expert witness based upon her failure to disclose the identity of the witness sufficiently in advance of trial. As a general rule, we review the trial court's rulings regarding discovery for abuse of discretion. *See Miller v. Forsyth Mem'l Hosp., Inc.*, 174 N.C. App. 619, 620, 625 S.E.2d 115, 116 (2005) ("It is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion. In addition, the appellant must show not only that the trial court erred, but that prejudice resulted from that error. This Court will not presume prejudice." (citations and quotation marks omitted)). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). However, if the trial court makes a discretionary ruling based upon a misapprehension of the applicable law, this is also an abuse of discretion. *See State v. Rhodes*, 366 N.C. 532,

536, 743 S.E.2d 37, 39 (2013) ("[A]n abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A [trial] court by definition abuses its discretion when it makes an error of law." (alterations in original) (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047) (1996))). And if the trial court's ruling depends upon interpretation of a statute, we review the ruling *de novo. Moore v. Proper,* 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) ("[W]hen a trial court's determination relies on statutory interpretation, our review is de novo because those matters of statutory interpretation necessarily present questions of law."). Where the language of a statute is clear, we need not construe the statute and must simply apply the plain meaning of the statute. *See Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). If the statute is ambiguous or unclear, we must consider the purpose of the statute and intent of the legislature as expressed in the statute.

> When the plain language of a statute proves unrevealing, a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means. The intent of the General Assembly may also be gleaned from legislative history. Likewise, later statutory amendments provide useful evidence of the legislative intent guiding the prior version of the statute. Statutory provisions must be read in context: Parts of the same statute dealing with the same subject matter must be considered and interpreted as a

> whole. Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each.

*Insulation Sys., Inc. v. Fisher*, 197 N.C. App. 386, 390, 678 S.E.2d 357, 360 (2009) (quoting *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003)). Where, as in this case, the Legislature has recently amended a statute, we also "presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts." *State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 763 (1992) (citing *Lumber Co. v. Trading Co.*, 163 N.C. 314, 317, 79 S.E. 627, 628-29 (1913)).

B. Motion to Exclude Expert Testimony

Wife contends the trial court erred by striking testimony and evidence from her expert witness, Victoria Coble. Wife attempted to present evidence regarding the tax consequences of alimony, tax rates, "cash flow issues and hypothetical rates of return on cash investments." Wife hired Ms. Coble a week prior to the trial and did not disclose her as an expert witness until the afternoon of 12 September 2017, the day before the trial. Husband moved to exclude Ms. Coble's testimony at the start of the trial, but the trial court initially denied Husband's motion, ordered that all of Ms. Coble's materials be produced to Husband in the courtroom and directed that she could be called to testify on the second day of trial. On the second day, Husband renewed his objection to Ms. Coble's testimony and made additional arguments to the

trial court based upon the 2015 amendments to Rule 26 of the North Carolina Rules of Civil Procedure, including a blog post on the issue published by Professor Ann Anderson of the University of North Carolina School of Government (hereinafter School of Government).

Although the parties had engaged in discovery, Husband had done no discovery requesting disclosure of expert witnesses. There was no discovery conference or pretrial conference addressing evidence or witnesses in the alimony portion of the case; the only pretrial order addressed the equitable distribution claim, and that order did not mention potential witnesses, including any expert witnesses. Wife argued that under North Carolina General Statute § 1A-1, Rule 26(a) and (e), Husband had not requested her to identify any expert witnesses and she thus had no duty to supplement any prior responses. In addition, we note that the Mecklenburg County Local Rules do not require disclosure of expert witnesses and do not require a pretrial order in an alimony claim. Both parties had timely produced financial affidavits and income information as required by the Local Rules.

Based upon the blog post, the trial court noted in open court that "Professor Anderson seem[s] to have a different opinion about how to interpret [Amended Rule 26]" than the trial court had the previous day. The trial court allowed Wife to proffer Ms. Coble's testimony in full but took the matter under advisement and contacted Professor Anderson by email. The trial court later disclosed Professor Anderson's

response to the parties and allowed them to respond to this information. Ultimately, the trial court changed its ruling and determined Wife was required to disclose the identity of the expert witness under North Carolina General Statute § 1A-1, Rule 26(b)(4)(a)(1) in advance of trial, even with no interrogatories or other discovery by Husband. Although Rule 26(b)(4)(a)(1) did not set a particular time for identification of experts, the trial court determined Wife had failed to give sufficient or fair notice as "24 hours in advance would pretty much [be] under anyone's interpretation, not reasonably in advance" of the trial and excluded the testimony.

C. Trial Court's Communication with Disinterested Expert

The ruling in question on appeal depends upon the interpretation of North Carolina General Statute § 1A-1, Rule 26, and particularly Rule 26(b)(4)(1)(a). Upon Husband's request, the trial court considered a blog post by Professor Anderson published on 4 September 2015; it states in part as follows:

> The General Assembly has amended the rule of procedure in civil cases for discovery of information about another party's expert witness. North Rule of Civil Procedure 26(b)(4) has largely been unchanged since 1975. With the amendments made by House Bill 376, S.L. 2015-153, the rule updates the methods of disclosing and deposing experts and implements some explicit work-product-type protections. The Rule now looks more like the corresponding provisions in Federal Rule of Civil Procedure 26 (after that Rule's own significant round of changes in 2010). The changes to North Carolina Rule 26(b)(4) apply to actions commenced on or after October 1, 2015. The rule now provides the following:
> **Expert witness disclosure.** A party is now

required to disclose the identity of an expert witness that it may use at trial (that is, a witness that may be used to "present evidence under Rule 702, Rule 703, or Rule 705 of the North Carolina Rules of Evidence"). It appears that the other party is no longer required to first submit formal interrogatories requesting the disclosure, but, as discussed below, that party has the option of doing so.

**Written report provision.** If the expert is one "retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosing party has the option of submitting a written report prepared by the expert that includes: a complete statement of the witness's opinions and the bases and reasons for them; facts the witness considered in forming the opinions; exhibits that will be used to summarize or support them; the witness's qualifications and a list of certain publications; certain prior expert testimony by the witness; and a statement of the expert's compensation. (This report is *required* under the Federal rule.) In the absence of this report, the other party may discover through interrogatories the subject matter of an expert's expected testimony; the substance of the facts and opinions to which the expert is expected to testify; and a summary of the grounds for each opinion.

**Time frames for disclosure.** The rule sets default time frames for submitting written reports of experts or interrogatory responses: 90 days before trial or, for rebuttals, 30 days after the opposing party's disclosure. These requirements may—and surely in many cases will be—altered by stipulation or court order.

Ann M. Anderson, *"North Carolina's Expert Witness Discovery Rule – Changes and Clarifications,"* School of Gov't (4 Sept. 2015), https://civil.sog.unc.edu/north-carolinas-expert-witness-discovery-rule-changes-and-clarifications/.

This Court observes that the School of Government provides continuing education for many public officials in North Carolina, including District Court judges, Superior Court judges, the Court of Appeals, and the Supreme Court, as well as many other local and state elected and appointed officials. As noted on the School of Government's website,

> As the largest university-based local government training, advisory, and research organization in the United States, the School of Government offers up to 200 courses, webinars, and specialized conferences for more than 12,000 public officials each year.
> Faculty members respond to thousands of phone calls and e-mail messages each year on routine and urgent matters and also engage in long-term advising projects for local governing boards, legislative committees, and statewide commissions.
> In addition, faculty members annually publish approximately 50 books, manuals, reports, articles, bulletins, and other print and online content related to state and local government. Each day that the General Assembly is in session, the School produces Daily Bulletin Online, which reports on the day's activities for members of the legislature and others who need to follow the course of legislation.

School of Government, https://www.sog.unc.edu/about/mission-and-history (last visited 5 Dec. 2019).

Although a trial judge must always carefully consider any communications with a disinterested expert regarding a question arising in a trial, the trial court fully advised the parties of the communication in open court and gave them an opportunity to review the information and respond to it. This procedure is not required by any statute or rule and is not possible or practicable in every situation. The North Carolina Code of Judicial Conduct allows judges to consult "a disinterested expert on the law applicable to a proceeding before the judge," but it does not set out any parameters for the consultation:

> A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither knowingly initiate nor knowingly consider ex parte or other communications concerning a pending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge.

North Carolina Code of Judicial Conduct Canon 3(A)(4).[1] Here, the trial court's disclosure of the communication to the parties eliminated any possibility of confusion or unfairness to the parties and provided a clear basis for appellate review, since the communication is addressed in the transcript.

---

[1] In contrast, regarding consultation with a disinterested expert, the American Bar Association Model Code of Judicial Conduct requires a judge to "give[] advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited," and to "afford[] the parties a reasonable opportunity to object and respond to the notice and to the advice received." ABA Model Code of Judicial Conduct Canon 2, Rule 2.9(A)(2). North Carolina has *not* adopted the ABA Model Code of Judicial Conduct and does not require notice to the parties and an opportunity to respond.

D.  Analysis of Rule 26(b)(4)(a)(1):

Under North Carolina General Statute § 1A-1, Rule 26(b), each party is required to disclose the identity of expert witnesses it may use at trial:

> (b) Discovery scope and limits.--Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> . . . .
> (4) Trial Preparation; Discovery of Experts. — Discovery of facts known and opinions held by experts, that are otherwise discoverable under the provisions of subdivision (1) of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as provided by this subdivision:
>> a. 1. In general. — In order to provide openness and avoid unfair tactical advantage in the presentation of a case at trial, a party must disclose to the other parties in accordance with this subdivision the identity of any witness it may use at trial to present evidence under Rule 702, Rule 703, or Rule 705 of the North Carolina Rules of Evidence.

N.C. Gen. Stat. § 1A-1, Rule 26(b) (2017).

This subsection of Rule 26 was substantially revised in an amendment adopted in 2015.[2]  Before the amendment, it read:

> 1. A *party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness* at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

---

[2] The amended rule was effective on 1 October 2015.  Husband filed his complaint on 6 November 2015.

> 2. Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to sub-subdivision (b)(4)b. of this rule, concerning fees and expenses as the court may deem appropriate.

N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a) (2013) (emphasis added).

Thus, before the 2015 Amendment, Rule 26(b)(4)(a)(1) provided that a party "may through interrogatories" require an opposing party to disclose expert witnesses[3] expected to testify at trial. *Id.* The 2015 Amendment to this subsection removed the language regarding interrogatories and states instead that a party "must disclose" expert witnesses.[4] *See* N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1) (2017).

As Professor Anderson's blog post correctly noted, subsection (b)(4)(a)(1) which requires disclosure is now more similar to Federal Rule of Civil Procedure 26. In addition, other amendments to Rule 26 adopted at the same time also made North Carolina's Rule 26 more similar to its federal counterpart. But since North Carolina has not adopted many of the other related provisions of the Federal Rules, the similarity is somewhat superficial. Regarding the 2015 amendments to Rule 26, Shuford's North Carolina Civil Practice and Procedure notes that North Carolina

---

[3] Throughout this opinion, we will use the term "expert witness" to refer to a witness who may be used at trial to "present evidence under Rule 702, Rule 703, or Rule 705 of the North Carolina Rules of Evidence." N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1) (2017).

[4] The 2015 Amendment changed other portions of Rule 26 as well, as noted by Professor Anderson's blog. The other changes to Rule 26 are not directly relevant to the issue on appeal.

Rule 26 and Federal Rule 26 both deal "with substantive aspects of discovery," but they are

> fundamentally different in their respective approaches. Since 1993, when Federal Rule 26 was substantively rewritten, the discovery procedures were substantially changed to establish what amounts, through mandatory discovery requirements, to standing interrogatories and requests for disclosure and production. The matter must be produced no later than 14 days before a scheduled conference to formulate a joint written discovery plan. While the North Carolina Rule now lays out the framework for a discovery plan and conference to be creased, it is not mandatory unless one of the parties requests to have a discovery meeting.

Alan D. Woodlief, Jr., *Shuford North Carolina Civil Practice and Procedure* § 26:28 (2018).

Because the 2015 Amendments to Rule 26 incorporated the concept of required disclosure of expert witnesses but set no procedure or timing for the disclosure, Rule 26(b(4)(a)(1) is ambiguous. The trial court appreciated this ambiguity, noting, "I think the rule is clear as mud." We must therefore review the trial court's interpretation of the 2015 Amendment to Rule 26 *de novo*. *See Moore v. Proper*, 366 N.C. at 30, 726 S.E.2d at 817.

In conducting *de novo* review of the 2015 Amendment to Rule 26(b)(4)(a)(1), we must first "determine whether [the] amendment is clarifying or altering." *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012). An "altering amendment" is intended to change the substance of the original statute, but a "clarifying

amendment" is not intended to "change the substance of the law but instead [to give] further insight into the way in which the legislature intended the law to apply from its original enactment." *Id.* Even if the statutory language is plain, we consider the title of the act to assist in "ascertaining the intent of the legislature." *Id.* at 8, 727 S.E.2d at 681. The Bill which made these amendments is entitled, "An Act Amending the Rules of Civil Procedure to Modernize Discovery of Expert Witnesses and Clarifying Expert Witness Costs in Civil Actions." S.L. 2015-153 (H.B. 376) (original in all caps). "To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes." *Ray*, 366 N.C. at 10, 727 S.E.2d at 682 (quoting *Ferrell v. Dep't of Transp.,* 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993)). Considering the purpose of the amendment—"to modernize discovery of expert witnesses"—and the comparison of the original and amended statutes, the 2015 Amendment was an "altering amendment" which was intended to change the substance of Rule 26(b)(4)(a)(1).[5]

In seeking to construe Rule 26(b)(4)(a)(1), we have also considered it in the context of Rule 26 in its entirety and Rule 37, which provides for enforcement and sanctions for violations of Rule 26. We have also compared North Carolina's Rule 26 to Federal Rule 26, as the amendments do make North Carolina's rule somewhat

---

[5] This analysis does not apply to the portion of the amendments addressing expert witness costs. That portion of the rule is not an issue in this case and the title of the bill expressly characterizes those changes as a "clarifying" amendment.

more similar to the federal rule. Most relevant to the issue presented here, the 2015 Amendment to North Carolina's Rule 26 did not incorporate several related provisions of Federal Rule 26 addressing *how* and *when* experts must be disclosed. Federal Rule 26(a)(1)(C) directs that certain required disclosures be made and sets out when "initial disclosures" must be provided. *See* Fed. R. Civ. P. 26(a)(1)(A) ("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, *without awaiting a discovery requ*est, provide to the other parties[.]"). North Carolina's Rule 26—in contrast to the required initial disclosures in the Federal rules—still requires the parties to ask for discovery.[6] *See* N.C. Gen. Stat. § 1A-1, Rule 26(a). In addition, Federal Rule 26(a)(2)(B) also *requires* the parties to provide a written report from the expert witnesses identified, while in North Carolina providing a report is optional. *Compare* Fed. R. Civ. P. 26(a)(2)(B) *with* N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(2). Federal Rule 26(f) *requires*, unless exempted, a conference regarding discovery and a discovery plan. Fed. R. Civ. P. 26(f). The analogous provisions in North Carolina's Rules are optional. N.C. Gen. Stat. § 1A-1, Rule 26(f). Overall, unless the parties have agreed to exchange reports from expert witnesses, have stipulated to a schedule, or there is a discovery plan or order setting

---

[6] "Discovery methods. — Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission." N.C. Gen. Stat. § 1A-1, Rule 26(a).

times for disclosure, North Carolina's Rule 26(b)(4)(a)(1) puts the parties in the difficult position of being bound by a vague requirement to disclose expert witnesses without any particular time or method set for making that disclosure.[7]

And even assuming Wife violated Rule 26(b)(4)(a)(1), our analysis cannot end there, as this Court has noted that Rule 37 sanctions "puts the teeth" in the other substantive rules governing discovery.

> The substantive law governing discovery is contained in N.C.G.S. § 1A-1, Rules 26-36. However, it is Rule 37 which governs discovery sanctions and which puts teeth in the other rules. As this Court stated in *Green v. Maness*, 69 N.C. App. 292, 299, 316 S.E.2d 917, 922, *disc. review denied,* 312 N.C. 622, 323 S.E.2d 922 (1984):
>> Our courts and the federal courts have held consistently that the purpose and intent of [Rule 37] is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to requests for discovery . . . . In addition to its inherent authority to regulate trial proceedings, the trial court has express authority under G.S. 1A–1, Rule 37, to impose sanctions on a party who balks at discovery requests.
> Therefore, although the trial court found that Brown violated several discovery rules, we must first find a basis in Rule 37 to support the trial court's imposition of sanctions.

*Pugh v. Pugh*, 113 N.C. App. 375, 378, 438 S.E.2d 214, 216 (1994) (alterations in

---

[7] Rule 26(b)(4)(f) sets a time for disclosure of testifying expert witnesses *if* the parties have agreed to "submission of written reports pursuant to sub-sub-subdivision 2. of sub-subdivision a. of this subdivision" *or* by interrogatories. N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(f). The time for disclosure may also be set by stipulation, discovery plan, or court order. *Id.*

original).

The interpretation of Rule 37 as described above has been followed by our appellate courts for many years. We must presume the Legislature was aware of this interaction between Rule 26 and Rule 37 when the 2015 amendment to Rule 26(b)(4)(a)(1) was adopted, without any related amendment to Rule 37.

> "The legislature's inactivity in the face of the Court's repeated pronouncements" on an issue "can only be interpreted as acquiescence by, and implicit approval from, that body." Such legislative acquiescence is especially persuasive on issues of statutory interpretation. When the legislature chooses not to amend a statutory provision that has received a specific interpretation, we assume lawmakers are satisfied with that interpretation.

*Brown v. Kindred Nursing Centers E., L.L.C.*, 364 N.C. 76, 83, 692 S.E.2d 87, 91-92 (2010) (citation omitted). Assuming that Wife was required by Rule 26(b)(4)(a)(1) to disclose Ms. Coble as her expert witness sooner than she did, we will first attempt to "find a basis in Rule 37 to support the trial court's imposition of" the sanction of excluding the expert witness. *See Pugh*, 113 N.C. App. at 378, 438 S.E.2d at 216. The answer to this question would be simple under Federal Rule 37, entitled "Failure to Make *Disclosures* or to Cooperate in Discovery; Sanctions":

> Failure to Disclose, to Supplement an Earlier Response, or to Admit.
> (1) Failure to Disclose or Supplement. *If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was*

> *substantially justified or is harmless.* In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>   (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>   (B) may inform the jury of the party's failure; and
>   (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c) (emphasis added).

The Advisory Committee Notes to Federal Rule 37 note it was amended in 1993 "*to reflect the revision of Rule 26(a), requiring disclosure of matters without a discovery request.*" Fed. R. Civ. P. 37(emphasis added) (1993 Amendment Notes). The revisions to subdivision (c) provided a "self-executing sanction" for failure to provide disclosures required under Rule 26:

> The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A).
> Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56. As disclosure of evidence offered solely for impeachment purposes is not required under those rules, this preclusion sanction likewise does not apply to that evidence.
> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the

inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

*Id.*

The answer is not so simple under North Carolina's Rule 37; it has no "self-executing sanction" for failure to make a disclosure under Rule 26(b)(4)(a)(1). In fact, Rule 37 does not address any sort of disclosure other than responses to discovery requests. *See* N.C. Gen. Stat. § 1A-1, Rule 37. North Carolina's Rule 37 is entitled "Failure to make discovery; sanctions." *Id.* As the title accurately implies, it addresses sanctions only for failure to respond to *discovery requests. Id.* It does not address sanctions for failure to disclose the identity of an expert witness under Rule 26(b)(4)(a)(1) in the absence of any discovery request, discovery plan, or court order requiring disclosure.[8] *See id.* North Carolina General Statute § 1A-1, Rule 37 was

---

[8] "Motion for order compelling discovery. — A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows: . . . . (2) Motion. — If a deponent *fails to answer a question propounded or submitted* under Rules 30 or 31, or a corporation or other entity *fails to make a designation under Rule 30(b)(6) or 31(a),* or a party *fails to answer an interrogatory* submitted under Rule 33, or if a party, in *response to a request for inspection* submitted under Rule 34, fails to respond that inspection will be permitted as requested or *fails to permit inspection as requested*, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. When taking a deposition on oral examination, the proponent of the question shall

not amended to accommodate the changes to Rule 26(b)(4)(a)(1) in 2015, and it has

not been amended since 2015.

North Carolina cases interpreting Rule 37 have generally held that a party

seeking sanctions must first demonstrate a violation of a substantive rule of

discovery, based upon Rules 26 through 36, obtain a court order to compel discovery,

and *then* Rule 37 sanctions may be imposed.[9]

> Generally sanctions under Rule 37 are imposed only for the
> failure to comply with a court order. Rule 37(d), however,
> expressly contemplates a limited number of circumstances
> where a court order is not required before sanctions can be
> imposed.

*Pugh*, 113 N.C. App. at 379, 438 S.E.2d at 217 (citation omitted).  Therefore, even

assuming Wife did not timely identify Ms. Coble as an expert witness under Rule

26(b)(4)(a)(1), North Carolina's Rule 37 provides no specific authority for sanctions

since Husband never propounded any discovery on this issue and did not obtain a

court order requiring Wife to disclose anything.

Recognizing the absence of authority for sanctions for a violation of rule

26(b)(4)(a)(1) under North Carolina's Rule 37, Husband argues that the "trial court

---

complete the examination on all other matters before the examination is adjourned, in order to apply for an order. If the motion is based upon an objection to production of electronically stored information from sources the objecting party identified as not reasonably accessible because of undue burden or cost, the objecting party has the burden of showing that the basis for the objection exists." N.C. Gen. Stat. § 1A-1, Rule 37(a) (emphasis added).

[9] None of the prior cases interpreting Rule 37 sanctions in this context were decided after or based upon the 2015 disclosure provision of Rule 26(b), but they are still binding precedent as to the application of Rule 37 sanctions.

properly exercised its inherent authority by granting [Husband's] motion and excluding Ms. Coble's expert testimony as a sanction for [Wife] violating the expert disclosure mandate of Amended Rule 26." Inherent authority has been defined as the court's power

> to do only those things which are reasonably necessary for the administration of justice within the scope of their jurisdiction. Inherent powers are limited to those powers which are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction.

*Matter of Transp. of Juveniles*, 102 N.C. App. 806, 808, 403 S.E.2d 557, 559 (1991) (citations and emphasis omitted).

In the context of discovery, prior cases indicate that the exercise of a trial court's inherent authority to impose sanctions for failure to comply with discovery rules first requires a violation of a particular rule—usually an intentional or repeated violation—or some behavior by counsel or a party which shows disrespect or defiance of the trial court's authority. *See generally Pugh*, 113 N.C. App. at 379, 438 S.E.2d at 217. Upon reviewing the cases cited by Husband to support the trial court's inherent authority to impose sanctions for abuse of discovery and other cases discussing a trial court's inherent authority in the context of discovery, we have been unable to find any instance of a sanction imposed based only upon inherent authority, without a clear and repeated failure of the party sanctioned to comply with a substantive rule of discovery. For example, Husband cites to *Cloer v. Smith,* where the Plaintiff

repeatedly refused with no valid legal basis to answer deposition questions. 132 N.C. App. 569, 512 S.E.2d 779 (1999). This Court upheld the trial court's imposition of sanctions for discovery violations based upon Rule 30(c) and Rule 37; it also noted that "[t]he trial court also retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rule 37." *Id.* at 573, 512 S.E.2d at 782. Husband also cites to *Telegraph Co. v. Griffin,* where the trial court held the plaintiff in contempt and sanctioned plaintiff for its repeated failure to respond to interrogatories and violation of an order compelling the plaintiff to respond. 39 N.C. App. 721, 251 S.E.2d 885 (1979). Although this Court noted generally that "Rule 37 allowing the trial court to impose sanctions is flexible, and a 'broad discretion must be given to the trial judge with regard to sanctions[,]'" the holding was based upon the plaintiff's repeated failure to respond to interrogatories under the authority granted by Rule 37, not inherent authority alone. *See id.* at 727, 251 S.E.2d at 888. But all of these cases were decided prior to the 2015 amendments to Rule 26, and since Rule 37 does not address failure to disclose expert witnesses without a discovery request, enforcing the requirement of Rule 26(b)(4)(a)(1) is "reasonably necessary for the administration of justice within the scope of [the trial court's] jurisdiction," and thus it is within the inherent authority of the trial court to impose a sanction. *See Matter of Transp. of Juveniles,* 102 N.C. App. at 808, 403 S.E.2d at 559.

Here, on the first day of trial, the trial court initially ruled that Wife's expert witness would be permitted to testify because Husband had never asked Wife to identify any expert witnesses in written discovery or her deposition. Referring to Rule 26(b)(4) "in its entirety" and subdivision (b)(4)(a)(1), the trial court initially denied Husband's motion to exclude the testimony:

> Reading those in accordance with each other must disclose in accordance with this subdivision the identity of a witness tells me that they have to provide the answer and the interrogatories if they're asked.
> They weren't asked. Reading it as a whole, I don't think you can complain if you never asked.

On the second day of trial, after communication with Professor Anderson, additional argument by the parties, and further consideration of the meaning of the 2015 Amendment to Rule 26(b)(4)(a)(1), the trial court determined that the 2015 Amendment limited the trial court's discretion to allow Wife's expert testimony and required its exclusion.[10] The trial court therefore revised its ruling and excluded Ms. Coble's testimony.

On appeal, both parties argue the trial court had the discretion to either allow or exclude testimony by Ms. Coble. Both Wife's and Husband's arguments present

---

[10] Husband argued, "The legislature has told us that Rule 26(a)(4), (a)(1), in particular has been amended, such that it now requires, *with no discretion*, when it says, 'In order to provide openness and avoid unfair tactical advantage in the presentation of a case at trial, a party must disclose to the other parties in accordance with this subdivision, the identity of any witness it may use at trial to present evidence under Rule 702, 703 or 705 of the North Carolina 3  Rules of Evidence.'" (Emphasis added.)

factors the trial court may consider in exercising its discretion to exclude the expert testimony or to allow it. Wife argues the trial court abused this discretion, and Husband argues the trial court properly exercised its discretion. But examination of the transcript and the trial court's stated basis for its initial ruling to allow the testimony and later decision to exclude it demonstrates that the trial court's ultimate ruling was *not* a discretionary ruling. Instead, the trial court determined as a matter of law it did not have the discretion to allow Ms. Coble's testimony because Wife had not identified the expert prior to trial under Rule 26(b)(4)(a)(1), even with no discovery request for identification of expert witnesses. The trial court stated its concern that Rule 26(b)(4)(a)(1) lacked a time frame for disclosure but based upon interpretations of *Federal* Rule 26 determined the expert witness testimony must be excluded.[11]

Since North Carolina General Statute § 1A-1, Rule 26(b)(4)(a)(1) does not include a timeframe for voluntary disclosure and the North Carolina Rules of Civil Procedure do not include the other related rule provisions which give Federal Rule 26(a)(2)(D) clear time requirements and the Federal Rule 37 provisions which give it "teeth," North Carolina's Rule 26(b)(4)(a)(1) leaves the matter of a party's compliance and any sanction or remedy for noncompliance within the trial court's inherent

---

[11] Based upon her communication with Professor Anderson, the trial court noted, "this Federal Rule's interpretation has been that the interrogatories are not required."

authority and discretion.[12]  The guiding purpose of disclosure in Rule 26(b)(4)(a)(1) is "to provide openness and avoid unfair tactical advantage in the presentation of a case at trial[.]"  N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1).  Thus, the trial court must make a discretionary determination of whether Wife's failure to disclose the expert sufficiently in advance of the trial gave her an "unfair tactical advantage" at trial or defeated the purpose of "providing openness" as contemplated by Rule 26(b).  Since Rule 26 does not set a particular time or method for disclosure, the trial court must make this discretionary determination based upon the particular circumstances. Since Rule 37 does not address sanctions for failure to disclose, the trial court has inherent authority to grant a remedy for the failure to disclose, which may include exclusion of the testimony or other remedies or sanctions as appropriate to the circumstances.  Here, the trial court's interpretation of Rule 26(b)(4)(a)(1) as *requiring* exclusion of Ms. Coble's testimony was in error.  Essentially, the trial court misapprehended the law by determining that it did not have the discretion to allow Ms. Coble's testimony, as demonstrated by the change in its ruling on the issue.[13] The trial court's failure to exercise its discretion was an abuse of discretion.  *See Hines*

---

[12] Although Federal Rule 37 has a "self-executing" sanction for failure to disclose, it also allows the trial judge some discretion, since "the [non-disclosing] party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  The trial court also has discretion to impose sanctions other than exclusion of the testimony.  *Id.*

[13] On the first day of trial, the trial court exercised its discretion to deny Husband's motion but also took into consideration the lack of relevant discovery requests, a discovery plan, and a pretrial order.

*v. Wal-Mart Stores E., L.P.*, 191 N.C. App. 390, 393, 663 S.E.2d 337, 339 (2008) ("A discretionary ruling made under a misapprehension of the law, may constitute an abuse of discretion.").

Upon *de novo* review of Rule 26(b)(4)(a)(1), we hold the Rule does require advance disclosure of expert witnesses who will testify at trial, even without a discovery request, discovery plan, or court order. The trial court had inherent authority to impose a sanction for failure to disclose sufficiently in advance of trial. The trial court also has discretion to allow or to exclude Ms. Coble's evidence or to impose another sanction for the failure to disclose, but the trial court failed to exercise this discretion and determined the testimony *must* be excluded based upon Rule 26(b)(4)(a)(1). We therefore reverse the trial court's ruling as to the admissibility of Ms. Coble's testimony and remand for reconsideration. On remand, the trial court should exercise its discretion either to allow or exclude Ms. Coble's testimony (or to impose some other sanction) upon consideration of whether the expert testimony gives Wife an "unfair tactical advantage" based upon the factors each party has argued on appeal in support of this discretionary decision and any other factors it deems appropriate.

III.    Consideration of Factors Under North Carolina General Statute § 50-16.3A(b)

A.  Standard of Review

"To support the trial court's award of alimony . . . the trial court's findings must be sufficiently specific to allow the reviewing court to determine if they are supported by competent evidence and support the trial court's award." *Wise v. Wise*, ___ N.C. App. ___, ___, 826 S.E.2d 788, 792 (2019). We review the trial court's determination of the amount of alimony for abuse of discretion." *Hill v. Hill*, ___ N.C. App. ___, ___, 821 S.E.2d 210, 224 (2018).

B. Analysis

Wife argues the trial court erred by failing to consider each of the 16 factors under North Carolina General Statute § 50-16.3A(b) for which evidence was presented in determining the amount of the alimony award.

> The term "alimony" is defined as "an order for payment of the support and maintenance of a spouse or former spouse." In determining the amount of alimony, the trial court "shall consider all relevant factors," including the sixteen (16) factors set forth in N.C. Gen. Stat. § 50-16.3A(b). "In the absence of such findings, appellate courts cannot appropriately determine whether the order of the trial court is adequately supported by competent evidence, and therefore such an order must be vacated and the case remanded for necessary findings."
> The factors set forth in N.C. Gen. Stat. § 50-16.3A are as follows:
> (1) The marital misconduct of either of the spouses. Nothing herein shall prevent a court from considering incidents of post marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation;
> (2) The relative earnings and earning

capacities of the spouses;

(3) The ages and the physical, mental, and emotional conditions of the spouses;

(4) The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;

(5) The duration of the marriage;

(6) The contribution by one spouse to the education, training, or increased earning power of the other spouse;

(7) The extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of a minor child;

(8) The standard of living of the spouses established during the marriage;

(9) The relative education of the spouses and the time necessary to acquire sufficient education or training to enable the spouse seeking alimony to find employment to meet his or her reasonable economic needs;

(10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;

(11) The property brought to the marriage by either spouse;

(12) The contribution of a spouse as homemaker;

(13) The relative needs of the spouses;

(14) The federal, State, and local tax ramifications of the alimony award;

(15) Any other factor relating to the economic circumstances of the parties that the court finds to be just and proper.

(16) The fact that income received by either party was previously considered by the court in determining the value of a marital or

> divisible asset in an equitable distribution of
> the parties' marital or divisible property.

*Collins v. Collins*, 243 N.C. App. 696, 707-09, 778 S.E.2d 854, 861 (2015) (citations

and brackets omitted) (quoting N.C. Gen. Stat. 50-16.3A (2013)).

> "The requirement for detailed findings is thus not a mere
> formality or an empty ritual; it must be done." "Although
> the trial judge must follow the requirements of this section
> in determining the amount of permanent alimony to be
> awarded, the trial judge's determination of the proper
> amount is within his sound discretion and his
> determination will not be disturbed on appeal absent a
> clear abuse of that discretion."

*Lamb v. Lamb*, 103 N.C. App. 541, 545, 406 S.E.2d 622, 624 (1991) (citation omitted).

Wife contends that the trial court failed to make findings on these factors for

which evidence was presented: (1) marital misconduct of Husband; (2) the tax

consequences of the alimony award, and (3) the "standard of living of the spouses

established during the marriage."

(1) Marital Misconduct of Either Spouse

As to marital misconduct, Wife notes that the trial court did make findings of

fact addressing her misconduct, a part of Husband's defense to her alimony claim,

but did not address her contentions of marital misconduct by Husband. Husband

contended Wife had committed marital misconduct early in their marriage. The trial

court made findings regarding this evidence and determined Husband had known

about the misconduct and condoned it. Wife presented evidence regarding Husband's

marital misconduct during the marriage, but the trial court's findings do not address this evidence at all. It is possible the trial court determined that even if Husband committed marital misconduct as Wife alleged, the trial court determined it would not change Wife's entitlement to alimony or the amount awarded, but evidence was presented on this factor, so the findings should have addressed it.

(2) Federal, State, and Local Tax Ramifications of the Alimony Award

As to the tax consequences of the alimony award, the trial court is required to make findings on a factor only if evidence is presented on that factor. Wife sought to present evidence on this factor by Ms. Coble's expert testimony, but the trial court excluded this evidence for the reasons discussed above. Since we have determined the trial court erred by failing to exercise its discretion and excluding Ms. Coble's testimony based upon a misapprehension of the law, on remand the trial court must determine whether, in its discretion, it will consider Ms. Coble's evidence. If so, the trial court's findings on remand should address the evidence on this factor.[14]

(3) The Standard of Living of the Spouses Established During the Marriage

---

[14] Wife's brief notes that since the trial, there have been changes in the income tax laws applicable to alimony. Any discussion of exactly how changes in the tax laws may affect the alimony award is beyond the scope of this appeal, but on remand the trial court may consider this issue. We also decline to address the potential relevance of Ms. Coble's testimony on remand as she discussed financial issues other than the taxable nature of alimony payment. For example, she testified regarding the tax ramifications of renting a home as compared to making mortgage payments and the amount of income Wife might earn from investing funds she received from the sale of the former marital home.

As to the standard of living during the marriage, Wife contends that she presented evidence of the "shared family expenses in three different ways: (1) the amount consistent with the standard of living of the parties while married ($5,138.67 per month); (2) the amount actually being spent by [Wife] at the time of trial ($4,246.27); and (3) the amount [Wife] would need if she purchased a home (which is consistent with how the parties lived during the marriage) instead of continuing to rent (as she had been since separation) ($5,015.94)." Wife also presented evidence of her individual expenses based upon the standard of living during the marriage of $3,681.00, and the reduced amount she was actually spending at the time of trial, $3,174.51. She argues the trial court considered only her actual expenses as of the time of trial but did not consider the other values based upon the accustomed standard of living during the marriage. She also notes that the trial court found that Husband's reasonable expenses included many of types of discretionary expenses which both parties had enjoyed during the marriage, but, after separation, only Husband could afford, such as home ownership, entertainment and recreation, meals out, Christmas and birthday gifts, and home furnishings. Husband also had surplus funds even after continuing his pattern of saving and investing in retirement assets established during the marriage, but the trial court did not include savings or retirement as part of Wife's reasonable expenses, although the parties had saved for

retirement during the marriage and she has no retirement plan at her new employment.

Husband contends that the trial court did not have to accept Wife's contentions regarding her reasonable expenses or the standard of living during the marriage. *See Nicks v. Nicks*, 241 N.C. App. 487, 501, 774 S.E.2d 365, 376 (2015) ("This Court has long recognized that the determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves." (brackets and quotation marks omitted) (quoting *Whedon v. Whedon*, 58 N.C. App. 524, 529, 294 S.E.2d 29, 32 (1982))). He also notes that the trial court made findings of fact in the equitable distribution portion of the order regarding the parties' "comfortable lifestyle;" the 3,700 square foot marital home which had net sales proceeds of $372,255.00, and the Lexus car Wife drove for several years. He also notes the distribution of various bank accounts, stock, and retirement assets, so Wife had the benefit of her portion of those assets—although Husband also received his portion of those assets. The parties had no marital debt mentioned in the order.

Our Supreme Court has made it clear that the "accustomed standard of living" established during the marriage is "more than a level of mere economic survival:"

> We think usage of the term accustomed standard of
> living of the parties completes the contemplated legislative

> meaning of maintenance and support. The latter phrase clearly means more than a level of mere economic survival. Plainly, in our view, it contemplates the economic standard established by the marital partnership for the family unit during the years the marital contract was intact. It anticipates that alimony, to the extent it can possibly do so, shall sustain that standard of living for the dependent spouse to which the parties together became accustomed. For us to hold otherwise would be to completely ignore the plain language of G.S. 50-16.5 and the need to construe our alimony statutes *in pari materia*. This we are unwilling to do.

*Rea v. Rea*, ___ N.C. App. ___, ___, 822 S.E.2d 426, 432 (2018) (quoting *Williams v. Williams*, 299 N.C. 174, 181, 261 S.E.2d 849, 855 (1980)).

Although the trial court made detailed findings as to the shared family expenses and reasonable individual expenses for Husband and Wife, these findings appear to be based upon the evidence of expenses for each party at the time of trial. Wife contends her actual living expenses after separation were reduced due to her inability to maintain the same standard of living as established during the marriage without assistance from Husband. No findings indicate any difference between Wife's *actual expenses* after separation as compared to the *accustomed standard of living* during the marriage as reflected in the equitable distribution portion of the order. The trial court does not have "to accept at face value the assertion of living expenses," *Nicks*, 241 N.C. App. at 501, 774 S.E.2d at 376, but it does have to consider the parties' accustomed standard of living during the marriage and not just Wife's actual expenses at the time of trial. Based upon the findings in the equitable distribution

portion of the order as to the parties' "comfortable lifestyle," large home, luxury vehicle, and substantial savings and investments during the marriage, it appears Wife's standard of living on her own after separation was significantly reduced from the level established during the marriage. Even the trial court's findings of some of the parties' expenses show the difference between Husband's standard of living at the time of trial, which appears to be more similar to the accustomed standard during the marriage as alleged by Wife, and Wife's reduced standard. For example, the trial court found Husband had reasonable expenses for "activities" of $460.20 per month; Wife's expense is only $75.00. Husband was allowed $300 per month for "meals out;" Wife was allowed only $150.00. Husband was allowed $200.00 per month for "home furnishings;" Wife was allowed only $45.00.[15] Husband's gross monthly income was $17,780.26; at the time of trial, Wife's gross income was $4,244.28. Certainly, there is no requirement that Wife enjoy the same lifestyle as Husband's current lifestyle, but the trial court must consider the accustomed standard of living developed during the marriage in determining Wife's reasonable need for support.

Wife also notes that Husband was continuing to save and invest for retirement and contends the parties had a pattern of saving during the marriage. Husband's

---

[15] Husband's shared family expenses were based upon one-third of the total household expense since he has remarried and the trial court allocated a portion of the expenses to his wife, although Husband testified he was paying 100% of the expenses. Wife's shared family expenses were based upon one-half of the total household expense. Since Husband's expenses were one-third of his actual expenditures, he was actually spending $1380.00 per month on "activities;" $900.00 per month on meals out; and $600.00 per month on furnishings.

affidavit showed he was investing $1,458.00 per month during the marriage, and he was investing $1,372.50 per month at the time of trial. Wife was either unemployed or worked part-time after the children were born, so their accumulation of retirement assets during the marriage was based largely upon Husband's contributions and his evidence would tend to show the accustomed level of retirement investment during the marriage. Based upon the equitable distribution findings, the parties accumulated substantial retirement savings and other investments during the marriage. Husband was continuing this pattern of savings, but after separation Wife was unable to do so. The trial court made no findings regarding this monthly expense.

Where the parties have established a pattern of saving for retirement as part of their accustomed standard of living during the marriage, this expense can be part of the standard of living and should be considered for purposes of alimony.

> This Court recently held in *Glass v. Glass*, 131 N.C. App. 784, 789-90, 509 S.E.2d 236, 239 (1998), that an established pattern of contributing to a retirement or savings plan may be considered by the trial court in determining the parties' accustomed standard of living. *Glass* cautioned, however, that a party's savings should not be used to "reduce his or her support obligation to the other by merely increasing his or her deductions for savings plans," nor should a spouse be able to "increase an alimony award by deferring a portion of his or her income to a savings account," emphasizing that "the purpose of alimony is not to allow a party to accumulate savings."
> Then, in *Rhew v. Rhew*, 138 N.C. App. 467, 531 S.E.2d 471 (2000), (a case which we note, was decided by this Court after the trial court in the case *sub judice* had entered its order denying alimony), we clarified our holding

in *Glass*, finding that although the parties' pattern of savings may not be determinative of a claim for alimony, the trial court must at least consider this pattern in determining the parties' accustomed standard of living.

*Vadala v. Vadala*, 145 N.C. App. 478, 481, 550 S.E.2d 536, 539 (2001) (citation omitted).

We see no indication the trial court considered the parties' pattern of savings and investment for retirement as part of their accustomed standard of living during the marriage. We realize the trial court distributed the marital assets accrued during the marriage in the equitable distribution provisions of the order, but that distribution does not negate the need to consider the pattern of savings and investment as a part of the accustomed standard of living during the marriage for purposes of alimony.

## IV. Basis for Amount of Alimony Awarded

Wife also contends that the trial court findings of fact are not sufficient to support the award of $1200.00 per month. "To support the trial court's award of alimony . . . the trial court's findings must be sufficiently specific to allow the reviewing court to determine if they are supported by competent evidence and support the trial court's award." *Wise v. Wise*, ___ N.C. App. at ___, 826 S.E.2d at 792. Although the amount of alimony is in the trial court's discretion, based upon the findings of fact we are simply unable to determine how the trial court arrived at the amount of alimony of $1,200.00 per month. The trial court found that Wife's gross

income was $4,244.28, which is "subject to deduction for federal tax, state tax, Medicare, and Social Security," but the trial court did not make a finding as to the amount of these deductions, although this information was in evidence.[16] The trial court found her total expenses, including shared family expenses and individual expenses, as $5,565.54. Under the Consent Order, Husband was paying $1,700.00 monthly in child support, but the order does not mention the child support payment at all. Even based upon the trial court's findings, it appears that Wife had greater reasonable needs than $1,200.00 per month, and Husband had the ability to pay substantially more. And if the trial court considers the standard of living during the marriage instead of Wife's reduced standard after separation, her needs may actually be higher. Based upon the trial court's findings, this is not a case where the trial court limited the alimony award because Husband lacked the ability to pay more alimony, nor was the alimony award reduced based upon any marital fault by Wife. The only issue was Wife's reasonable needs based upon the accustomed standard of living established during the marriage. We must therefore vacate the trial court's order as to the amount of the monthly prospective alimony obligation and remand for additional findings of fact to address the issues noted and entry of a new order for prospective alimony. *See Collins*, 243 N.C. App. at 707, 778 S.E.2d at 861.

## V. Retroactive Alimony

---

[16] Even without Ms. Coble's testimony, the parties' financial affidavits, pay stubs, and income tax returns included evidence of tax deductions and net incomes.

A. Standard of Review

"To support the trial court's award of alimony . . . the trial court's findings must be sufficiently specific to allow the reviewing court to determine if they are supported by competent evidence and support the trial court's award." *Wise v. Wise*, ___ N.C. App. at ___, 826 S.E.2d at 792. If the trial court denies alimony, the findings must also set forth the reasons for the denial. N.C. Gen. Stat. § 50-16.3A(c) (2017) ("The court shall set forth the reasons for its award *or denial* of alimony and, if making an award, the reasons for its amount, duration, and manner of payment. (emphasis added)).

B. Analysis

Wife last argues that the trial court erred by denying her claim for alimony retroactive to either the date of separation or the date of filing of the claim for post-separation support and alimony because the findings do not address the reason for denial. The order on appeal does not include any findings regarding support Husband voluntarily paid after separation, either as child support or alimony, although the evidence showed that he did make house payments until sale of the marital home and he did pay some other support for the benefit of the children and Wife. The only finding in the order mentioning past alimony is finding of fact 91:

> In its discretion, the Court declines to find that [Husband] owes any arrears for PSS or alimony and this Order shall superseded and supplant any prior Order of this Court regarding spousal support.

This finding implies there *was* a prior order for alimony, since the term "arrears" normally refers to accrued payments owed under an order, and to the extent Husband failed to pay all sums required under the "prior order," the trial court did not award any "arrears." But the trial court never entered a "prior order" regarding post-separation support or alimony, nor was there a "prior order" to supersede or supplant. This finding is thus not supported by the record. The trial court did not enter an order for child support either, until the Consent Order entered just before the alimony and equitable distribution trial.

Husband agrees there was no prior order for alimony or child support but argues that he voluntarily paid "tax-free spousal support, in the absence of a court order, from the time the parties separated up through the alimony trial." He argues that he paid cash support of $1,000 or $1,100 twice each month and paid for groceries and car insurance as well as the mortgage and other expenses associated with the marital residence where Wife resided until it was sold in July 2015. After the sale of the marital residence, Husband contends that he continued to pay "tax-free cash support" in various amounts. Husband argues that "[o]ne may logically infer" that since the trial court ordered alimony of $1,200.00 per month, and he had paid more than that, the trial court did not err in failing to award retroactive alimony. Husband also argues that Wife did not preserve any claims for retroactive child support or child support arrears in their Consent Order.

This Court has held that a dependent spouse may be entitled to alimony from the date of separation forward:

> In construing the prior version of the statute governing alimony, N.C. Gen. Stat. § 50–16.3 (repealed by 1995 N.C. Sess. Laws ch. 319, § 1, effective 1 October 1995), this Court held that a dependent spouse may be entitled to alimony not merely from the date the claim for alimony is filed but rather from the date of the parties' separation.
>
> In 1995, the General Assembly "effected a 'wholesale revision' in North Carolina alimony law" by repealing § 50–16.3 and replacing it with § 50–16.3A. In *Brannock*, this Court held that the 1995 changes to the alimony statute were so extensive that a claim for alimony under the current statute is "fundamentally different" than a claim under the prior, now repealed, statute.
>
> Defendant relies on our holding in Brannock to argue that under the current statute – § 50–16.3A – alimony may not be awarded "retroactively." However, while *Brannock* does discuss the changes in North Carolina law regarding alimony, nothing in the opinion references any intent by the General Assembly to eliminate retroactive alimony or to abrogate our rulings in Austin and its progeny.

*Smallwood v. Smallwood*, 227 N.C. App. 319, 332-33, 742 S.E.2d 814, 823-24 (2013) (citations and brackets omitted).

Husband is correct there was evidence regarding payments he made after separation for the benefit of Wife and the children, but that evidence is not as clear as he contends. He testified that his Exhibit 27 was a chart showing "all the cash support that I provided since the date of separation." But in our record, Husband's Exhibit 27 is a bank statement; we have been unable to find a chart showing the cash

support. Husband also testified about a "flash drive [with] all of the backup supporting documentation used to create this chart," but our record does not include a flash drive and does not indicate what documents were on the flash drive.

Even if we assume Husband presented the chart and "backup supporting documentation" as evidence of the payments, the trial court did not make any findings regarding support Husband may have paid after the date of separation, either as child support or alimony, and this Court cannot make findings of fact. *See Horton v. Horton*, 12 N.C. App. 526, 529, 183 S.E.2d 794, 797 (1971). We cannot determine that Husband paid any particular amounts after separation, and we have no way of determining how much of the sums he paid should be allocated to child support and how much to alimony, nor can we determine how much he should have paid as compared to what he actually paid. During much of the time after separation, Wife was not employed, or not employed full time, and when she did become employed, she testified that she would incur work-related child care costs. The amounts owed by Husband for child support alone would have varied over time based upon Wife's earnings, or lack thereof, at the time. At the time of trial, she was employed full-time and thus her ability to support herself and the children was greater than it had been at any time since separation.

As to Husband's argument of waiver, at the trial, there was some discussion of Wife's retroactive child support claim but no resolution. Near the beginning of the

trial, Wife's counsel stated that retroactive child support was also an issue to be resolved at the trial, and the trial court noted that it believed the Consent Order had entirely resolved the child support claim. But the Consent Order specifically resolves only permanent child custody and permanent prospective child support, effective from 1 September 2017 forward, in the amount of $1,700.00 per month. The Consent Order does not mention retroactive child support or waive any claim for retroactive child support. Wife's counsel argued that she could still pursue back child support since the Consent Order did not address anything prior to 1 September 2017. The trial court stated, "I don't know that there's an issue to take up--- . . . based on---[.]" Unfortunately, the trial court was interrupted and the discussion moved on to another topic. The question was never resolved, at least in our record.

Later in the trial, Husband argued that Wife's need for both retroactive child support and alimony was decreased after the marital home was sold and Wife received her portion of the proceeds since she could have invested the proceeds in the stock market and earned substantial returns from the investment. Husband even asked the trial court to take judicial notice of her potential returns from investing in stock market, which the trial court very appropriately declined to do.[17]

---

[17] Rule 201 of the North Carolina Rules of Evidence provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b).

During arguments at the close of the trial, Husband noted that the Consent Order on child support had set support based upon the child support guidelines, but that there was no need to consider work-related day care because Husband was available to care for the children since he works mostly from home. Wife testified that she would need day care while working. Wife also noted that under the Consent Order, Husband would have more custodial time than he had since the parties' separation and the prospective child support was set based upon the new custodial schedule. In any event, we cannot determine any amounts or expenses the Consent Order as to child support was based upon because it has no findings of fact or explanation of how support was calculated. In fact, the trial court also noted that under the Child Support Guidelines, based upon the parties' incomes, "it doesn't calculate to $1700.00," the amount of child support in the Consent Order. The Consent Order does not include any findings of fact to explain how the child support was calculated. The order states, "The parties have waived the necessity of the Court making additional findings of fact and/or conclusions of law in support of the order except as set forth below." There are no findings of the parties' incomes or expenses in the Consent Order and no indication that the Guidelines were actually used to set the amount of $1,700.00 per month.[18] In any event, the issues before us on appeal

---

[18] The order does provide for modification of the child support based upon the Guidelines when Husband has an obligation to support only one child.

are not based upon the child support claim; the issue on appeal is the denial of Wife's claim for retroactive alimony, and the Consent Order surely did not waive that.

The trial court did not make sufficient findings to explain why it denied Wife's claim for retroactive alimony. Based upon the evidence, it appears Husband voluntarily paid Wife after their separation, but the amounts varied over time, and he had obligations for both child support and post-separation support. If he voluntarily paid sufficient amounts to meet *both* of these obligations, the trial court could deny Wife's claim for retroactive alimony, but the trial court did not make any findings of fact or conclusions of law to support denial of Wife's claim, as required by North Carolina General Statute § 50-16.3A(c).[19] The order does not "set forth the reasons for its . . . denial of alimony" from the period after the date of separation forward. N.C. Gen. Stat. § 50-16.3A(c). We must therefore vacate and remand for the trial court to make findings of fact and conclusions of law regarding Wife's entitlement to retroactive alimony and if the sums already paid by Husband were not sufficient to meet both his child support and alimony obligations, to determine how much retroactive support is due to Wife.

## VI. Conclusion

We reverse the trial court's decision to exclude Wife's expert testimony and remand for reconsideration of whether to exclude Ms. Coble's proffered testimony and

---

[19] We express no opinion on the issue of retroactive child support other than to note it appears to be a pending claim and is not resolved in either the Consent Order or the order on appeal.

evidence. We also reverse and remand the 4 April 2018 order as to the amount of the prospective alimony and as to the denial of retroactive alimony. The portions of the order regarding Equitable Distribution were not a subject of Wife's appeal and thus those portions of the order stand. On remand, the trial court shall make additional findings of fact and conclusions of law to address the issues noted above. At the request of either party, the trial court shall allow the parties to present additional evidence and argument limited to the issues to be addressed on remand. If neither party requests additional hearing, the trial court may in its discretion either receive additional evidence and argument or may make its findings and conclusions and enter a new order regarding retroactive and prospective alimony based upon the current record.

REVERSED IN PART AND REMANDED.

Judges HAMPSON and BROOK concur.